# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY ROSSER,<br><br>            Petitioner,<br><br>vs.<br><br><br>MATTHEW CATE, Secretary of CDCR,<br><br>            Respondent. | CASE NO. 10-CV-2203 MMA (WVG)<br><br>**ORDER RE: REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE;**<br><br>[Doc. No. 11]<br><br>**OVERRULING PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATION;**<br><br>[Doc. No. 15]<br><br>**DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>[Doc. No. 4]<br><br>**ISSUING CERTIFICATE OF APPEALABILITY** |

Petitioner Larry Rosser is a state prisoner proceeding *pro se* and *in forma pauperis* with a first amended petition for writ of habeas corpus [Doc. No. 4] pursuant to Title 28 of the United States Code, section 2254.  Petitioner challenges prison disciplinary proceedings which resulted in a guilty finding for possession of a deadly weapon and the loss of 181 days of good time credits.  Respondent filed an answer [Doc. No. 7] and Petitioner filed a traverse [Doc. No. 10].  The matter

1  is currently before the Court for review of the Report and Recommendation prepared by the
2  assigned magistrate judge recommending that the first amended petition be granted [Doc. No. 11].
3  Petitioner filed objections to the Report and Recommendation [Doc. No. 15].  Respondent
4  requested and received an extension of time to object to the Report and Recommendation [Doc.
5  Nos. 13, 14].  The deadline for objecting to the Report and Recommendation has passed.
6  Respondent has not filed objections.

## DISCUSSION

8       On June 24, 2008, prison officials confiscated property from Petitioner's cell, including a
9  legal dictionary belonging to his cell mate, in which a razor blade was hidden.  Thereafter,
10 Petitioner was charged with possession of a deadly weapon in violation of Title 15 of the
11 California Code of Regulations, section 3006(a).  On August 5, 2008, a prison disciplinary hearing
12 was held and the assigned hearing officer found Petitioner guilty of the charge.  The hearing
13 officer assessed a forfeiture of 181 days of good time credits.  Petitioner unsuccessfully sought
14 habeas relief in state court, claiming various violations of his due process rights.  Petitioner alleges
15 these claims in his first amended petition.  The magistrate judge recommends the Court deny
16 Petitioner's procedural due process claims, but grant Petitioner's substantive claim that his guilty
17 finding was not supported by any reliable evidence.
18      Petitioner objects to the magistrate judge's finding that he received the procedural process
19 due under the standards set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  Petitioner argues
20 that the hearing officer was biased, and relied upon insufficient evidence to find him guilty of
21 possessing a deadly weapon.  Pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28
22 U.S.C. § 636(b)(1), the Court must "make a *de novo* determination of those portions of the report .
23 . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the
24 findings or recommendations made by the magistrate [judge]."  28 U.S.C. § 636(b)(1); *see also*
25 *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).  Because of the broad scope of
26 Petitioner's objections, the Court has conducted a *de novo* review of the entire record.  For the
27 reasons discussed below, the Court finds Petitioner's objections to be without merit.
28      The Supreme Court held in *Wolff v. McDonnell* that prisoners are not afforded the full

panoply of rights in prison disciplinary proceedings because those rights are necessarily moderated by the "legitimate institutional needs" of the prison. *Wolff*, 418 U.S. at 556; *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), citing *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454-55 (1984). However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) a minimum of 24 hours advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in defense of the charges; and (3) a written statement by the fact finder of the evidence ultimately relied on and the reasons for the disciplinary action. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563-67.

The Court agrees with the magistrate judge's finding that in this case the minimum procedural due process requirements were met. Petitioner's allegations regarding the impartiality of the hearing officer are unfounded, and the record clearly establishes that Petitioner was provided adequate notice of the charges against him, exercised his right to call witnesses and present evidence in his defense, and received a written copy of the hearing officer's decision. Petitioner's objections to the contrary are overruled.

In addition to affording a prisoner minimal procedural due process during a prison disciplinary proceeding, the outcome of the proceeding must be supported by "some evidence." *Hill*, 472 U.S. at 455, citing *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927). The "some evidence" standard is satisfied where "there is any evidence in the record that could support the conclusion reached." *Id.* at 455-56. Here, the magistrate judge concludes that the outcome of Petitioner's disciplinary proceeding was not supported by any reliable evidence. As such, the magistrate judge finds that the state appellate court's decision denying habeas relief involved an unreasonable application of federal law and was based on an unreasonable determination of the facts in light of the evidence presented.[1] The magistrate judge

---

[1] Both the state superior court and the state appellate court considered the merits of Petitioner's claims, and both courts issued reasoned decisions denying habeas relief. *See* Lodgment Nos. 3, 4. Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

1 recommends granting Petitioner's first amended petition on this basis. This Court respectfully
2 disagrees, and therefore declines to adopt the corresponding portions of the Report and
3 Recommendation.

4     A federal court considering a petitioner's habeas corpus claim is not required to examine
5 the entire record, independently assess witness credibility, or weigh evidence. *Hill*, 472 U.S. at
6 455-56. The "some evidence" standard is "minimally stringent." *Cato v. Rushen*, 824 F.2d 703,
7 705 (9th Cir. 1987). Accordingly, the task of the reviewing court is limited to determining
8 whether there is any evidence in the record, even if "meager," to support the outcome of the
9 disciplinary proceeding. *Hill*, 472 U.S. at 455-57. Here, the state appellate court correctly found
10 that this modest standard was easily met.

11     As an initial matter, that an inmate-manufactured weapon was found hidden in a book
12 belonging to Petitioner's cell mate, in Petitioner's cell, is sufficient to support a finding of guilt for
13 the charged offense under the "some evidence" standard. *See Ramirez v. Sanders*, 2008 U.S. Dist.
14 LEXIS 102940, 2008 WL 5381089, at *3 (C.D. Cal. Dec. 18, 2008); *see also Hamilton v.*
15 *O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (constructive possession provides some evidence of
16 guilt when contraband found where only a few inmates have access). The record demonstrates
17 that the hearing officer relied on several pieces of evidence to support Petitioner's guilty finding,
18 including a 51 page Incident Report. The Incident Report recites the accurate housing location of
19 Petitioner and his cell mate Odell Muhammad. *See* Incident Report, pg. 10/51 ("Muhammad,
20 Odell T98221 Housing ASU-151L"); pg. 11/51 ("Rosser, Larry K26537 Housing ASU-151U").
21 The Incident Report lists each of the prison staff members who participated in the search of
22 Petitioner's cell and the discovery of the weapon. *See* Incident Report, pg. 17/51 (B. Smith); pg.

---

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The decision of the California Court of Appeal was the last reasoned opinion denying relief, and is therefore the opinion which this Court considers for the present purposes. *Ylst v. Nunnmeaker*, 501 U.S. 797, 801-806 (1991).

18/51 (P. Castro); pg. 19/51 (L. Hernandez). The Report establishes that Officer P. Castro conducted the search of Petitioner's cell, and personally removed the property of his cell mate Muhammad for screening:

> "On Tuesday, June 24, 2008 at approximately 1257 hours, while conducting mass searches in ASU-1, I was assigned to search cell #ASU-151, located in E-Pod. Cell ASU-151 was occupied by Inmates MUHAMMAD T98221 (ASU-151L) and ROSSER K26537 (ASU-151U). I placed the lower bunk property, which is owned by MUHAMMAD, into a crate and proceeded to the Rapiscan X-Ray machine to scan the property. MUHAMMAD's property was scanned by CRT Officer A. Adams and CRT Sergeant B. Smith. The X-ray was positive for unknown contraband. Sgt. Smith removed a black colored book from MUHAMMAD's property, labeled it, and gave it to Officer L. Hernandez (S&I Officer #4) to search. I was later informed that a razor blade was discovered inside the book."

*See* Incident Report, pg. 28/51 (Report of P. Castro, dated 6/24/2008). Sergeant Smith's report corroborates Officer Castro's report, and sets forth the results of the screening:

> "On Tuesday, June 24, 2008, while performing duties as the CRT "RAPISCAN" X-Ray Team, Fire Chief A. Adams and I (Sergeant B. Smith) conducted x-ray scanning of all inmate personal/state property and mattresses for contraband within ASU #1 Housing Unit. All mattresses were clearly marked with the cell number, lower/upper bunk prior to removal from the assigned cell. All state and personal property was identified as cell number, upper/lower bunk as brought to the scanning station by the assigned officer. The following items of suspected contraband, respectively were identified by the "RAPISCAN" machine and brought to a secondary inspection site by Squad Officer L. Hernandez. The following weapons were identified and seized, respectively:
>
> 1257 hours, 06/24/2008 Cell #ASU-151L, Inmate Muhammad T98221:
> Razor Blade hidden in book"

*See* Incident Report, pg. 24-25/51 (Report of B. Smith, dated 6/24/2008). Sergeant Smith's report is corroborated by the Report of Fire Chief Adams.[2] *See* Incident Report, pg. 50-51/51. Officer Hernandez's report corroborates the reports of Officer Castro and Sergeant Smith, establishes the final links in the chain of custody,[3] and describes his discovery of the weapon and the steps he

---

[2] The inclusion of these reports in the record is inconsistent with the assertion in the Report and Recommendation that "[t]here is no report or testimony from Officers Adams or Smith as to this search." *See* R&R, pg. 3.

[3] The Court finds that the record clearly establishes the weapon's chain of custody, and thus disagrees with the specific assertion in the Report and Recommendation to the contrary, that "[a] weapon was found in a book but the chain of custody of that book is unclear." *See* R&R, pg. 29. The Incident Report and other record documents demonstrate conclusively that Officer Castro placed Petitioner's cell mate Muhammad's property into a milk crate, and brought the milk crate containing the property to be screened by the x-ray machine. Sergeant Smith and Fire Chief

1 took to document his findings:

> On Tuesday, June 24, 2008, while performing my duties as Security and Investigations (S&I) Officer #4, I was assigned to search property alerted to me by staff who were scanning property utilizing an X-ray machine and collect any evidence items discovered during the searches [sic] Administrative Segregation Unit (ASU).
>
> At approximately 1257 hours, I was alerted of the possibility of contraband inside a book from cell ASU-151, assigned to Inmates Muhammad, CDC# T98221, (ASU-151L) and Rosser, CDC# K26537, (ASU-151U). I searched the book, "The Plain Language Law Dictionary," which was labeled as coming from cell ASU-151L, during which I discovered an Inmate Manufactured Weapon, secreted inside the pages. The weapon is an altered razor blade measuring approximately 1 and ½ inches long and 1/4 inch wide. Utilizing a digital camera, I photographed the weapon and the location of discovery. I took custody of the weapons and placed them directly into the Main S&I Evidence Room for further processing.
>
> The digital images of all weapons and contraband items discovered were then transferred from the digital camera onto a CDR Disk, which will then be placed directly into the Main S&I Evidence Room and is to be treated as original.

*See* Incident Report, pg. 31-37/51 (Report of L. Hernandez, dated 6/24/2008 at top of pg. 31, reflecting accurate date of incident; signed on 6/24/2008 at pg. 37, last page of report).[4]

The Incident Report also contains two pages which display the digital images taken by Officer Hernandez [Lodgment No. 2, Inmate Ex. A], clearly showing the front cover of the dictionary, labeled using a black marker, with "1257" (time) and "151L" (location), and then showing a razor blade of the length described in the officers' reports placed in between pages of

---

Adams took control of the property from Officer Castro, x-rayed the property, and identified unknown contraband in Muhammad's legal dictionary. Sergeant Smith and Fire Chief Adams then turned the property over to Officer Hernandez, who took control of the legal dictionary, inspected it physically, and found the razor blade hidden inside the pages of the dictionary. Officer Hernandez digitally photographed the book and the weapon, and then brought the property to the Main Evidence room for cataloguing and further processing.

[4] The Report and Recommendation asserts that "the reliability of this report is suspect since it appears to have been signed, dated, and reviewed on June 20, 2008 (four days before the cell searches occurred). Even if the reporting date is a typographical error, the fact that the reviewer not only failed to spot and even repeated the inaccurate date, raises serious questions as to the truthfulness, accuracy, and reliability of this document." *See* R&R, pg. 27. While the Report accurately notes that Officer Hernandez incorrectly dated several pages of his report, his report correctly states the date of the incident in question, and Officer Hernandez correctly dated his report where he signed his name to the report. Thus, it would appear that the inaccurate dates are indeed typographical mistakes. Because the substance of the report is accurate and is corroborated by the other reports contained in the record, the Court disagrees with the Report's opinion that the errors call into serious question the report's "truthfulness, accuracy, and reliability."

the dictionary (around the area of terms beginning with the letter "E", as evidenced by the definitions of "escrow" and "establishment clause"). Lieutenant R. Hopper's report summarizes the discovery and source of the weapon at issue:

> Weapon #07: At approximately 1257 hours, Officer Hernandez discovered Weapon #07 inside a book: "The Plain Language Law Dictionary," which was labeled as coming from cell #ASU-151, occupied by Inmates MUHAMMAD T98221 (Lower Bunk) and ROSSER K26537 (Upper Bunk).

*See* Incident Report, pg. 3/51 (Report of R. Hopper, dated 6/25/2008). Lt. Hopper also provides a physical description of the weapon, that corroborates Officer Hernandez's findings:

> Weapon #07 described as "One (1) Inmate Manufactured Weapon (altered Razor Blade, measuring approximately 1-1/2" long and 1/4" wide, secreted inside the pages of the book: "The Plain Language Law Dictionary").

*Id*. at 4. Lt. Hopper's report establishes that a total of 17 weapons were confiscated during the June 24, 2008 ASU cell search, of which 12 were razor blades, one of those blades having been found in Petitioner's cell, secreted in his cell mate's legal dictionary.

The record also reflects that both Officers Castro and Hernandez provided statements to the hearing officer which corroborate the findings of their written reports. *See* Lodgment No. 2, Inmate Ex. B: Rules Violation Report Part C, Reporting Employee's Statement by L. Hernandez; Witness' Statement by P. Castro. The record also contains a copy of the Cell Search Receipt, dated 6/24/2008, signed by Officer Castro, identifying one razor blade as being confiscated from the housing location identifying the cell of Petitioner and his cell mate. *See* Lodgment No. 2., Inmate Ex. G: Cell Search Receipt.

In sum, all due process requirements were satisfied with regard to the prison disciplinary hearing challenged in Petitioner's first amended petition. The evidence relied upon by the hearing officer in finding Petitioner guilty of possessing a deadly weapon meets the applicable "some evidence" standard. The state appellate court correctly identified this standard as the appropriate standard for judicial review and reasonably applied it to Petitioner's case. Accordingly, the Court declines to adopt the magistrate judge's recommendation that Petitioner is entitled to habeas relief and **DENIES** Petitioner's first amended petition for a writ of habeas corpus.

///

### CERTIFICATE OF APPEALABILITY

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Rule 11(a) of the Rules Governing Section 2254 Cases. Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 336, quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate should issue if the petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. *Slack*, 529 U.S. at 483-84.

Here, it appears that reasonable jurists could debate whether the petition should have been resolved in a different manner. This Court disagrees with the recommendation of the magistrate judge, and concludes that Petitioner's guilty finding and resulting loss of good time credits were based on "some evidence" as required by the Supreme Court's holding in *Hill*, 472 U.S. at 455. Although the Court believes Petitioner is unlikely to succeed on appeal, it acknowledges that the merits of this claim for relief are at least debatable. Given this conclusion, the Court issues a certificate of appealability on the question of whether "some evidence" supports the outcome of the prison disciplinary proceedings at issue. *See Miller-El*, 537 U.S. at 338.

**IT IS SO ORDERED**.

DATED: January 19, 2012

_____
Hon. Michael M. Anello
United States District Judge